**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**MIKE HOOVER, in his own right,
and as Trustee of the HOOVER REVOCABLE TRUST**                              **PLAINTIFF**

**V.**                              **3:07CV0088 JMM**

**UNITED COMPONENTS, INC., d/b/a UCI ACQUISITION
HOLDINGS, INC.; UNITED COMPONENTS, INC., d/b/a
AIRTEX; and UNITED COMPONENTS, INC., d/b/a
MID-SOUTH MANUFACTURING, INC.**                              **DEFENDANTS**

## ORDER GRANTING SUMMARY JUDGMENT

Pending is Defendants' Motion for Summary Judgment and Supplemental Motion for

Summary Judgment.  Plaintiff has responded and the Defendants have replied.  For the reasons

set forth below, the Motion is GRANTED.

<u>Facts</u>

On or about August 6, 2004, Plaintiff accepted employment with Mid South

Manufacturing, Inc., a subsidiary of United Components, Inc. ("UCI"), as plant manager at the

Marked Tree, Arkansas plant.  Included in Plaintiff's compensation package was a non-qualified

stock option to purchase 2,500 shares of common stock in UCI at an exercise price of $100.00

per share.  (Def.'s Ex. A, Ex. B, Ex. C).  The options were subject to the terms and the vesting

schedule set forth in the Non-Qualified Stock Option Agreement, the Amended and Restated

Stock Option Plan, and the Stockholders Agreement.  Pursuant to the Stockholders Agreement,

UCI maintained a right to repurchase any shares held by Plaintiff for a period of six months

following his separation from UCI.  (Def's Ex. D).

On July 7, 2005, Plaintiff separated from his employment with UCI.  He notified UCI of

his request and intent to exercise any of his vested options.  (Def.'s Ex. E).  Plaintiff had become

vested with approximately 438 shares of UCI common stock and had earned the rights to an additional 250 shares. On August 1, 2005, UCI explained to Plaintiff that if he exercised his option, UCI would exercise its repurchase rights under the Stockholders Agreement. (Def.'s Ex. F). UCI explained that the repurchase would be made at the fair market value of the stock which was set at $100.00. In other words, Plaintiff would be selling the shares back to UCI at the same price at which he purchased them.

On June 29, 2007, Plaintiff filed suit against the Defendants for breach of contract, fraud and unjust enrichment under Arkansas law. The Court has diversity jurisdiction over the action. Plaintiff claims that the UCI stock has gained a present value far in excess of $100. Because of the alleged discrepancy in value, Plaintiff notified Defendants of his rejection of their repurchase offer. Therefore, Defendants have refused to deliver to Plaintiff the stock shares earned and vested in him. Plaintiff contends the Defendants' actions constitute breach of contract, fraud and unjust enrichment of the Defendants and would completely deprive him of the benefit of the bargain which formed his employment agreement. (Complaint at p. 1). Plaintiff seeks compensatory damages in the amount of $567,600, punitive damages, injunctive relief compelling the Defendants to immediately pay over to the Plaintiff the fair market value of the shares with interest, and for costs and attorneys fees.

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there
> is a need for trial -- whether, in other words, there are genuine
> factual issues that properly can be resolved only by a finder of fact
> because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact. It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion. Once this is done, his burden is
> discharged, and, if the record in fact bears out the claim that no
> genuine dispute exists on any material fact, it is then the
> respondent's burden to set forth affirmative evidence, specific
> facts, showing that there is a genuine dispute on that issue. If the
> respondent fails to carry that burden, summary judgment should be
> granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

<u>Discussion of the Law</u>

The elements for breach of contract under Arkansas law include: (1) the existence of a valid and enforceable contract; (2) an obligation on the part of the defendant; (3) a breach of that

3

obligation; and (4) damages resulting from the breach.  *Marks v. Powell,* 162 B.R. 820, 827

(E.D. Ark. 1993)(citing *Rabalaias v. Barnett*, 683 S.W.2d 919 (Ark. 1985)).

In the Motion for Summary Judgment, Defendants contend that the Plaintiff is unable to

demonstrate that he suffered any damages based upon his own calculation of the stock value.

Plaintiff has stated that the proper calculation of the stock value should be ascertained by

dividing the value of the company by the number of outstanding stock shares.  (Def.'s Ex. G).

According to Plaintiff, the amount of UCI shareholders' equity is $277,975,000.  According to

the March 30, 2007 Form 10-K filed by UCI with the U.S. Securities and Exchange Commission

for the fiscal year ending December 31, 2006, there were 2,721,470 shares of UCI common stock

outstanding.   This number is increased by 308,000 stock options available.  (Def.'s Ex. G supp.

A at § 2.1).[1]  This results in 3,029,470 outstanding stock shares.  Dividing the shareholders'

equity of $277,975,000 by the number of outstanding stock shares yields a stock value of $91.76

per share.  Thus, if Plaintiff would have exercised his option to purchase UCI stock at $100 and

sold them at fair market value of $91.76, he would have a net loss.  Plaintiff cannot prove

contractual damages in this case.

In order to prove a case sounding in fraud, the Plaintiff must prove the following: (1) a

false representation of fact; (2) defendant's knowledge or belief that the representation is false;

(3) the defendant's intent to induce plaintiff's reliance on the misrepresentation; (4) plaintiff's

---

[1]  The Amended and Restated Stock Option Plan of UCI Acquisition Holdings, Inc. § 2.1
states: "The shares of stock subject to Options shall be shares of Common Stock.  Subject to
Section 7.1, the aggregate number of such shares which may be issued under this Plan is
338,778."  (Ex. G supp. A, § 2.1). The Plaintiff has calculated the aggregate number of options
to be 308,000 at the relevant time.  (Ex. G).  Therefore, the Court will use this number in the
calculation.

justifiable reliance; and (5) damages resulting from the reliance.  *Bishop v. Tice*, 622 F.2d 349

(8th Cir. 1980); *Wilson v. Allen*, 810 S.W.2d 42 (Ark. 1991).  "An action for fraud or deceit may

not be predicated on representations relating solely to future events."  *Goforth v. Smith,* 991

S.W.2d 579, 586 (Ark. 1999) (citing *Delta School of Commerce, Inc. v. Wood*, 766 S.W.2d 424

(1989)).

> In the context of negotiating a contract, a misrepresentation sufficient to form the basis of
> a deceit action may be made by one prospective party to another and must relate to a past
> event, or a present circumstance, but not a future event.  An assertion limited to a future
> event may be a promise that imposes liability for breach of contract or a mere prediction
> that does not, but it is not a misrepresentation as to that event.

*P.A.M. Transport, Inc. v. Arkansas Blue Cross and Blue Shield,* 868 S.W.2d 33, 36 (Ark.

1993)(quoting 1 E. Allen Farnsworth, Farnsworth on Contracts § 4.11 (1990); see also, *Delta*

*School of Commerce*, supra (citing *Anthony v. First National Bank of Magnolia*, 431 S.W.2d 267

(Ark. 1968); *Lawrence v. Mahoney*, 225 S.W. 340 (Ark. 1920); *Harriage v. Daley*, 180 S.W. 333

(Ark. 1915); and *Conoway v. Newman*, 121 S.W. 353 (Ark. 1909)).

Plaintiff admits that the Defendants did not "indicate the actual value of the stocks

themselves" at the time of his contract negotiations.  (Pl.'s Statement of Mat. Facts, at p.3).  The

information that he received from the Defendants explained the stock options as "carrying

extraordinary and great value in relation to his employment decision."  (Pl.'s Ex. B).  Plaintiff

does not provide any evidence that the Defendants misrepresented a fact related to a past event

or a current event.  Defendants insistence that the stock option benefit was of extraordinary value

is a  prediction of future value and cannot form the basis of a fraud claim.  *Southeastern*

*Distributing Co. v. Miller Brewing Co.,* 237 S.W.3d 63, 74 (Ark. 2006)(" Projections of future

events or conduct cannot support a fraud claim as a matter of law.").  Further, Plaintiff has failed

to provide sufficient evidence that the Defendants knew that the representation regarding the stock options value was false, that he justifiably relied on the representation, and that he sustained damages as a result.

To prove unjust enrichment, Plaintiff must prove that the Defendants received something of value, to which the Defendants were not entitled and which the Defendants must restore. *Hatchell v. Wren*, 211 S.W.3d 516, 522 (Ark. 2005).

> There must also be some operative act, intent, or situation to make the enrichment unjust and compensable.  One who is free from fault cannot be held to be unjustly enriched merely because he or she has chosen to exercise a legal or contractual right.  In short, an action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain.

*Id.* (internal citations omitted).

The Court does not see how unjust enrichment applies to the facts of this case. Defendants received the benefit of Plaintiff's services while he was employed by Mid South Manufacturing.  Plaintiff received compensation, eligibility for bonus compensation, stock options and other benefits for his service.  At the time of Plaintiff's separation from employment, Defendants opted to enforce the right of repurchase stated in Section 2 of the Amended and Restated Stockholders Agreement of UCI Acquisition Holdings, Inc.  (Def.'s Ex. D at p. 2-5). The fact that the stock options did not provide a benefit to Plaintiff based upon the value of the options at the time of his separation does not provide a basis for unjust enrichment.

In conclusion, the Court finds that the Defendants' Motion for Summary Judgment (Docket # 19 and # 35) is GRANTED.  The Clerk is directed to close the case.

IT IS SO ORDERED this 15th day of May 2008.

James M. Moody
United States District Judge